## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CYNTHIA CHILDERS** | * | |
| | * | |
| Plaintiff, | * | **Civil action No.** |
| | * | |
| v. | * | **Section:** |
| | * | |
| **RENT-A-CENTER EAST, INC.,** | * | **Magistrate:** |
| **EXPERIAN INFORMATION SOLUTIONS, INC.** | * | |
| **AND TRANS UNION, LLC** | * | |
| | * | |
| Defendants. | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I.     Introduction

1. This is the Complaint brought by an individual consumer under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* and the Unfair Trade Practices Act, Louisiana Revised Statute § 51:1409(A), against defendants Rent-A-Center East, Inc., Experian Information Solutions, Inc and Trans Union, LLC.

### II.     Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331 and 1337.  Venue is appropriate in this judicial district as all events occurred in St. Tammany Parish, Louisiana.

### III.     Parties

3. Plaintiff, Cynthia Childers ("Childers") is a natural person who resides in St. Tammany Parish, Louisiana, and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c). Childers is also an alleged "debtor" as defined by the FDCPA, 15 U.S.C. § 1692a, although she denies that she owes any amount of the alleged "debt."

4. Defendant Rent-A-Center East, Inc. (hereinafter, "RAC") is a foreign corporation authorized to do and doing business in the State of Louisiana, and through its division AcceptanceNow, is a person who furnishes credit information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2. Additionally, RAC, through AcceptanceNow is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a.

6. Defendant Experian Information Solutions, Inc. (hereinafter, "Experian") is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).  Experian is a foreign corporation authorized to do and doing business in the State of Louisiana.

7. Defendant Trans Union, LLC (hereinafter, "Trans Union") is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).  Trans Union is a foreign corporation authorized to do and doing business in the State of Louisiana.

### IV.     Factual Allegations

8. On or about January 8, 2021, Childers discovered that an account had been opened in her name through RAC's lease to own department and/or credit division AcceptanceNow. Said account had been opened on November 23, 2020.

9. Childers immediately commenced the dispute process, as she did not open any such AcceptanceNow account; and while she had had a Rent-A-Center account in the past, she had not purchased or leased any furniture.

10. Childers was instructed to file a report with law enforcement, which she did on January 8, 2021. St. Tammany Parish Sheriff's Office opened its investigation (Agency Report No. 2021-000260 – Reference Ticket Number 1663879). Deputy Matthew Ezzell and Reviewing Officer Ryan Impastato were charged with such STPSO investigation.

11. Not knowing exactly how to proceed, Childers filed complaints with the Federal Trade Commission (FTC) and the Consumer Financial Protection Bureau (CFPB). Both agencies' website instructed Childers to check her personal credit reports and if the account was being reported, that she should dispute it with such bureaus.

12. Before she could register any disputes or make any claims of identity theft, she was notified through a credit monitoring application, Chase Credit Journey, that her credit score had dropped nearly 100 points due to the major derogatory entry by Acceptance Now.

13. That same day, on January 8, 2021, Childers submitted a dispute Trans Union, LLC in formally disputing the alleged debt as it was not owed and was a subject of a STPSO investigation for fraud and identity theft. Trans Union responded to such dispute, more than two months later on March 12, 2021, that the account was accurate and belonged to Childers; Trans Union refused to remove the erroneous entry form Childers' credit report.

14. Childers submitted another formal dispute to Experian Information Solutions, Inc. ("Experian") on January 19, 2021. Experian responded to such dispute on February 9,

2021 by verifying the accuracy of the AcceptanceNow debt, and it too refused to remove the erroneous entry from Childers' credit report.

15. Consequently, Childers submitted another formal dispute of the AcceptanceNow account to Experian on February 16, 2021. Experian responded to this second dispute on March 3, 2021 by again verifying the Acceptance Now debt as accurate, once again refusing to remove the erroneous account from Childers' credit report.

16. Contemporaneously with the disputes to the credit reporting agencies, Childers contacted contacted RAC about the account, and she received an initial response from Tiffany Smith from Preferred Lease who asked Childers to submit additional information, including but not limited to the police report. Preferred Lease is a division of RAC.

17. As the STPSO had not yet completed its investigation, Childers was unable to submit the police report, but she did submit evidence of her identity, which gave rise to a text, then an email conversation with James Simmons, also of Preferred Lease. Childers started by texting a copy of the STPSO complaint card on March 4, 2021 to James Simmons.

18. By email dated March 12, 2021, James Simmons wrote to Valerie Rosen, Preferred Lease Credit Reporting Specialist the following:

> "I have several accounts that I need to get removed off our customers credit. They are involved in employee fraud. Our coworkers opened these accounts without the knowledge of the customers. LP is involved knows I am requesting we remove these items off the customers credit."

19. Therefore, it is beyond dispute that on or before March 12, 2021, RAC knew explicitly that the account at issue in this case did not belong to Childers, was a product of identity theft and fraud, and should not be reported on or collected from Childers.

20. Childers received confirmation from AcceptanceNow in the form of a Credit Reporting Bullseye Form showing the account at issue herein was closed on March 12, 2021. This form confirmed:

> "This account was opened in Cynthis Childers name by a coworker. She then changed the name on the account to Cynthis Shoulders. The coworker changed the last name and social security number."

In other words, RAC investigated the dispute, discovered that the perpetrator was a female – suggesting that RAC knew exactly which employee engaged in the fraud – and thereby ordered that the account be closed.

21. Childers corresponded several more times with James Simmons, both by text and email, whereby James Simmons promised the account would be removed from Childers' credit history, but that it would take 30-60 days to accomplish.

22. Assuming the matter resolved, Childers received a note from her credit monitoring application that as of March 31, 2021, Experian was reporting that the AcceptanceNow account had been charged off. In other words, Experian was reporting that not only was the AcceptanceNow account Childers's responsibility, but that she failed in her responsibility.

23. Childers reported this error to James Simmons, who again and again promised that the account would be removed from Childers' credit history.

24. As of this date, May 18, 2021, the AcceptanceNow account appears on Childers' credit history, not only by Trans Union and Experian, but also Equifax Information Services, LLC ("Equifax"). All three credit reporting agencies report that Childers owes a balance

of $3,753.00 to AcceptanceNow, that the account was charged off in March 2021, and as a result, Childers' credit is severely damaged.

25. RAC continues to report that Childers owes a debt it knows was opened by an RAC employee without Childers' knowledge or consent, and all three credit reporting agencies report to this day that Childers owes this debt. As such, rather than close the fraudulent account, RAC reported it as a charge-off. And rather than conduct any re-investigation of RAC's verifications, Trans Union and Experian simply rubber-stamped RAC's erroneous reports.

26. As a direct result of this erroneous entry in her credit records, Childers was turned down for an application for credit through Paypal. Furthermore, the 100 point drop in her credit score presently prevents Childers from securing approval for a car loan at an interest rate she should otherwise be entitled to.

27. Consequently, Experian and Trans Union both prepared and issued consumer credit reports concerning Childers that included inaccurate information. Equifax is also reporting the account as a charge-off, but because Childers has not formally disputed the account through Equifax, it is not a defendant herein.

28. All defendants are reporting an account they know full well, or should know does not belong to Childers, that it was a product of identity theft and fraud, and despite multiple formal disputes and promises, all defendants continue to damage Childers to this day.

**First Claim for Relief**

**(Negligent Noncompliance with FCRA against RAC)**

29. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

30. Defendant RAC is a "furnisher of credit information" as defined by 15 U.S.C. § 1681a(c).

31. Childers notified Experian and Trans Union, that she disputed the RAC account. Consequently, Experian and/or Trans Union notified RAC of Childers' dispute. These notifications were superfluous because RAC already knew about the fraudulent opening of the account and that Childers was not responsible for it.

32. Defendant RAC negligently failed to comply with the requirements of the FCRA, 15 U.S.C. § 1681s-2(b).

33. As a result of RAC's failure to comply with the requirements of the FCRA, Childers has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Childers seeks damages in an amount to be determined by the jury. In particular, Childers was denied a Paypal account because of the existence of the inaccurate entries on her credit reports.

34. Childers requests attorney's fees pursuant to 15 U.S.C. § 1681o(a).

**Second Claim for Relief**

**(Willful Noncompliance with FCRA against RAC)**

35. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

36. Defendant RAC is a "furnisher of credit information" as defined by 15 U.S.C. § 1681a(c).

37. Childers notified Experian and Trans Union, that she disputed the RAC account. Consequently, Experian and/or Trans Union notified RAC of Childers' dispute. These

notifications were superfluous because RAC already knew about the fraudulent opening of the account and that Childers was not responsible for it.

38. Therefore, RAC's failure to comply with the requirements of the FCRA, 15 U.S.C. § 1681s-2(b) was willful.

39. As a result of RAC's failure to comply with the requirements of the FCRA, Childers has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Childers seeks damages in an amount to be determined by the jury. In particular, Childers was denied a PayPal account because of the existence of the inaccurate entries on her credit reports. Childers also seeks punitive damages in an amount to be determined by the jury.

40. Childers requests attorney's fees pursuant to 15 U.S.C. § 1681n(a).

## Third Claim for Relief

### (Unfair Trade Practices against Transworld)

41. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

42. RAC knew that Childers disputed the account at issue herein. RAC also knew full well, as documented by internal emails upon which Childers was copied, that the account was fraudulently opened by an RAC employee in Childers' name, and that Childers was in no way responsible for such AcceptanceNow account.

43. Furthermore, James Simmons of RAC's Preferred Lease division promised Childers that the erroneous account would be removed from her credit history. Instead, the account was,

and continues to be listed in Childers' credit history as a charge-off. This credit reporting is a form of debt collection and violates the Louisiana Unfair Trade Practices Act.

44. Specifically, Louisiana Revised Statute § 51:1409(A) reads in pertinent part:

Any person who suffers any ascertainable loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by any other person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

45. Under Louisiana Revised Statute 51:1401 *et seq.* actual damages not only includes monetary losses of the kind plaintiff suffered, but also includes damages for mental anguish, embarrassment and humiliation. *See Laurents v. Louisiana Mobile Homes, Inc.*, 689 So.2d 536 (La. App. 3 Cir. 2/5/97). Moreover, Louisiana Revised Statute 51:1405 calls for the payment of reasonable attorneys fees and costs in the event of an "ascertainable loss of money or moveable property."

### Fourth Claim for Relief

**(Fair Debt Collection Practices Act against Transworld)**

46. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

47. Childers is a "debtor" as defined by the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692a, although she denies that she owes any amount of the alleged "debt."

48. Defendant RAC is a "debt collector" as defined by the FDCPA, § 1692a because it collects debt through its AcceptanceNow division.

49. Defendant RAC violated the FDCPA in one or more of the following ways:

a) making false or misleading representations;

b) communicating credit information which it knew to be false or should have known to be false;

c) failing to disclose in the initial written communication that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose;

d) failing to send Childers the information required by § 1692g(a);

e) failing to cease communication with Childers after receiving written notice that Childers refused to pay the debt and that Childers did not owe the alleged debt;

f) continuing collection activities after receipt of Childers' dispute without sending validation of the debt; and/or

g) representing that Childers owed amounts that it knew explicitly that she did not owe.

50. As a result of RAC's failure to comply with the requirements of the FDCPA, Childers has suffered actual damages, including economic loss, invasion of privacy, damage to reputation, interference with her normal and usual activities, worry, fear, distress, frustration, embarrassment, and humiliation, for which she seeks damages in an amount to be determined by the jury, in addition to statutory damages in an amount to be determined by the Court.

51. Childers requests her attorney fees pursuant to the FDCPA, § 1692k(a)(3).

**Fifth Claim for Relief**

**(Negligent Noncompliance with FCRA against Trans Union)**

52. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

53. Trans Union negligently failed to comply with the requirements of FCRA by verifying an

erroneous debt that it knew or should have known was not owed.

54. As a result of Trans Union's failure to comply with the requirements of FCRA, Childers has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Childers seeks damages in an amount to be determined by the jury.

55. Childers requests attorneys' fees pursuant to 15 USC §1681o(a).

## Sixth Claim for Relief

### (Willful Noncompliance with FCRA against Trans Union)

56. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

57. Trans Union willfully failed to comply with the requirements of FCRA by verifying an erroneous debt that it knew or should have known was not owed.

58. As a result of Trans Union's failure to comply with the requirements of FCRA, Childers has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Childers seeks damages in an amount to be determined by the jury. Childers also seeks punitive damages in an amount to be determined by the jury.

59. Childers requests attorneys' fees pursuant to 15 USC §1681n(a).

## Seventh Claim for Relief

### (Negligent Noncompliance with FCRA against Experian)

60. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

61. Experian negligently failed to comply with the requirements of FCRA by verifying an erroneous debt that it knew or should have known was not owed.

62. As a result of Experian's failure to comply with the requirements of FCRA, Childers has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Childers seeks damages in an amount to be determined by the jury.

63. Childers requests attorneys' fees pursuant to 15 USC §1681o(a).

### Eighth Claim for Relief
### (Willful Noncompliance with FCRA against Experian)

64. Plaintiff realleges paragraphs 1 – 28 as though fully set forth herein.

65. Experian willfully failed to comply with the requirements of FCRA by verifying an erroneous debt that it knew or should have known was not owed.

66. As a result of Experian's failure to comply with the requirements of FCRA, Childers has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Childers seeks damages in an amount to be determined by the jury. Childers also seeks punitive damages in an amount to be determined by the jury.

67. Childers requests attorneys' fees pursuant to 15 USC §1681n(a).

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief in her favor as follows:

1. Actual damages to be determined by the jury;

2. General and special damages to be determined by the jury;

3. Punitive damages to be determined by the jury;

4. Statutory damages;

5. Attorneys' fees;

6. Costs and expenses incurred in the action; and

7. Such other and further relief as is appropriate.

PLAINTIFF DEMANDS A TRIAL BY JURY.

DATED this 18th day of May, 2021.

    Respectfully submitted,

    SANDLER MICHAUD, LLC

    /s/ Marc R. Michaud
    Marc R. Michaud, LA Bar No. 28962
    1050 S. Norman C. Francis Pkwy, Ste. 219
    New Orleans, LA 70125
    Telephone: (504) 291-8300
    Facsimile: (504) 291-8301
    Email: marc@smnola.com