**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CYNTHIA CHILDERS                                             CIVIL ACTION

VERSUS                                                       NO. 21-960

RENT-A-CENTER EAST, INC., ET AL.                             SECTION: "G"

## ORDER AND REASONS

Plaintiff Cynthia Childers ("Plaintiff") brings this suit against Defendants RAC Acceptance Now East, LLC ("RAC"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, "Defendants").[1] Plaintiff alleges that an account was fraudulently opened under her name through RAC's credit division, AcceptanceNow.[2] Plaintiff claims that despite RAC knowing that the account does not belong to Plaintiff, the account continues to appear on her credit history.[3] Pending before the Court is RAC's "Motion to Compel Arbitration and Dismiss."[4] Plaintiff opposes the motion.[5] The Court held oral argument on the motion on July 28, 2021. Considering the motion, the memoranda in support and in opposition, the arguments made at oral argument, the record, and the applicable law, the Court grants RAC's motion to the extent RAC requests that this Court compel arbitration. The Court denies RAC's motion to the extent RAC requests dismissal and instead stays Plaintiff's claims

---

[1] Rec. Doc. 1.

[2] *Id.* at 2.

[3] *Id.* at 4, 6.

[4] Rec. Doc. 17.

[5] Rec. Doc. 19.

against RAC pending arbitration.

## I. Background

On May 18, 2021, Plaintiff filed a complaint in this Court.[6] In the Complaint, Plaintiff alleges that on January 8, 2021, she discovered that an account had been fraudulently opened in her name in RAC's credit division, AcceptanceNow.[7] Plaintiff claims that she "immediately commenced the dispute process, as she did not open any such AcceptanceNow account" and "had not purchased or leased any furniture" at the time the account was opened.[8] Plaintiff alleges that she filed a police report and submitted formal disputes with Trans Union and Experian.[9] Plaintiff claims that both credit agencies "responded . . . that the account was accurate" and refused to remove the entry from her credit report.[10]

Plaintiff alleges that thereafter, she reported the account to RAC.[11] Plaintiff claims that a division of RAC, Preferred Lease, instructed her to submit additional information, which Plaintiff did in the form of evidence of her identity and a copy of the complaint she had submitted to the police.[12] Plaintiff alleges that a Preferred Lease employee, James Simmons, then emailed a Preferred Lease Reporting Specialist, Valerie Rosen, informing Ms. Rosen that RAC employees had opened fraudulent accounts in the names of RAC customers and requesting that such accounts

---

[6] Rec. Doc. 1.

[7] *Id.* at 2.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 3–4.

[11] *Id.* at 4.

[12] *Id.*

be removed from the customers' credit reports.[13] Plaintiff claims that on March 12, 2021, she

received confirmation from AcceptanceNow that the account had been fraudulently opened by an

RAC employee and that the account would be closed.[14] Plaintiff claims that she was "promised

the account would be removed from [her] credit history, but that it would take 30-60 days to

accomplish."[15]

      Despite this promise, Plaintiff alleges that to date Experian and Trans Union, along with

Equifax Information Services, LLC, all report that Plaintiff "owes a balance of $3,753.00 to

AcceptanceNow."[16] Plaintiff claims that "rather than close the fraudulent account, RAC reported

it as a charge-off" and "rather than conduct any re-investigation of RAC's verifications, Trans

Union and Experian simply rubber-stamped RAC's erroneous reports."[17] Plaintiff claims that the

presence of the fraudulent account on her credit report has led to her being "turned down for an

application for credit through Pay[P]al" and prevented her from "securing approval for a car loan

at an interest rate she should otherwise be entitled to."[18]

      In this suit, Plaintiff brings the following claims: (i) negligent noncompliance with the

Fair Credit Reporting Act ("FCRA") against RAC; (ii) willful noncompliance with the FCRA

against RAC; (iii) unfair trade practices under Louisiana Revised Statute § 51:1409 against RAC;

(iv) violation of the Fair Debt Collections Practices Act ("FDCPA") by RAC; (v) negligent

---

[13] *Id.*

[14] *Id.* at 5.

[15] *Id.*

[16] *Id.* at 5–6.

[17] *Id.* at 6.

[18] *Id.*

noncompliance with the FCRA against Trans Union; (vi) willful noncompliance with the FCRA against Trans Union; (vii) negligent noncompliance with the FCRA against Experian; and (viii) willful noncompliance with the FCRA against Experian.[19]

On July 7, 2021, RAC filed the instant motion to compel arbitration and dismiss.[20] On July 20, 2021, Plaintiff filed an opposition brief.[21] On July 27, 2021, with leave of Court, RAC filed a reply brief in further support of the motion.[22] Also on July 27, 2021, with leave of Court, Plaintiff filed a sur-reply in further opposition to the motion.[23] On July 28, 2021, the Court held oral argument.

## II. Parties' Arguments

### A.    RAC's Arguments in Support of the Motion

RAC argues that the parties are required to arbitrate the present dispute.[24] In support, RAC points to an account that Plaintiff did legitimately open with RAC in 2017 to buy bedroom furniture.[25] RAC argues that the 2017 account was "evidenced by a Rental-Purchase Agreement . . . and accompanying Consumer Arbitration Agreement," (the "2017 Arbitration Agreement") which contained a clause requiring arbitration for any claims between the parties, including claims "that arise after the termination of any Consumer Contract between the parties."[26]

---

[19] *Id.* at 6–12.

[20] Rec. Doc. 17.

[21] Rec. Doc. 19.

[22] Rec. Doc. 31.

[23] Rec. Doc. 33.

[24] Rec. Doc. 17-1.

[25] *Id.* at 3.

[26] *Id.* at 3–4.

Significantly, RAC contends that the 2017 Arbitration Agreement delegates the preliminary question of whether or not a dispute between the parties is arbitrable to an arbitrator, not this Court.[27] RAC contends that this Court cannot ignore this provision and must submit the question of whether this case is arbitrable under the 2017 Arbitration Agreement to an arbitrator.[28] RAC claims that the Supreme Court has upheld provisions delegating the question of arbitrability to an arbitrator because "arbitration is simply a matter of contract between the parties."[29]

Even if this Court were to determine the arbitrability of Plaintiff's claims, RAC argues that such claims are "unquestionably" covered by the 2017 Arbitration Agreement.[30] RAC alleges that the 2017 Arbitration Agreement is governed by the Federal Arbitration Act (the "FAA") because Plaintiff's transaction with RAC in 2017 involved commerce and because the 2017 Arbitration Agreement specifically provides for the application of the FAA.[31] RAC argues that the FAA favors enforcement of arbitration agreements.[32]

RAC contends that "[b]y the express terms of the 2017 Arbitration Agreement," the parties "agreed to arbitrate all disputes and claims between them, even those that arose after the termination of the 2017 Account."[33] RAC claims that the instant dispute falls within the scope of the 2017 Arbitration Agreement because Plaintiff's claims for identity theft "necessarily relate to personal identifying information that AcceptanceNOW received from Plaintiff because of the

---

[27] *Id.* at 4.

[28] *Id.*

[29] *Id.* at 6–9.

[30] *Id.* at 4.

[31] *Id.* at 9–10.

[32] *Id.* at 10–12.

[33] *Id.* at 4, 12–14.

2017 Account."[34] RAC contends that no federal statute or policy renders Plaintiff's claims non-arbitrable.[35]

Finally, RAC argues that Plaintiff's claims should be dismissed because "all of Plaintiff's claims against AcceptanceNOW must be referred to arbitration."[36]

### B.       *Plaintiff's Arguments in Opposition to the Motion*

In opposition, Plaintiff first contends that the instant motion should be treated as a motion for improper venue under Federal Rule of Civil Procedure 12(b)(3).[37] Plaintiff claims that under a Rule 12(b)(3) motion, the Court may consider evidence outside of the pleadings.[38]

Plaintiff argues that the Court, not an arbitrator, must determine the applicability of the 2017 Arbitration Agreement to the present dispute.[39] Plaintiff contends that she "questions the very existence of any agreement between the parties as it applies to the account actually in question in this case" and therefore, this Court must determine the arbitrability of this dispute.[40]

Further, Plaintiff claims that because the account in question in this litigation was fraudulently opened, Plaintiff cannot be required to arbitrate this dispute.[41] Plaintiff "denies the very existence" of the second contract between the parties because such contract was fraudulent.[42]

---

[34] *Id.* at 14–16.

[35] *Id.* at 16.

[36] *Id.* at 17.

[37] Rec. Doc. 19 at 4.

[38] *Id.*

[39] *Id.* at 5.

[40] *Id.* at 6–7.

[41] *Id.* at 7.

[42] *Id.* at 9.

Plaintiff claims that because there was no lawful second contract, the 2017 Arbitration Agreement is irrelevant to her claims in this litigation.[43]

Finally, Plaintiff alleges that in the event that this Court does order the parties to arbitration, the Court should stay, not dismiss, the action pending arbitration.[44]

**C.      RAC's Arguments in Further Support of the Motion**

In reply, RAC argues that an arbitrator must determine the arbitrability of this dispute under the delegation clause found in the 2017 Arbitration Agreement.[45] RAC contends that when a valid agreement exists that contains a delegation clause, an arbitrator is to determine arbitrability.[46] RAC argues that in such scenarios a court may become involved only when a delegation clause itself is disputed.[47] Here, given that Plaintiff does not challenge the existence of the 2017 Arbitration Agreement or the validity of the delegation clause therein, RAC argues that this Court must compel arbitration.[48] RAC further argues that caselaw provided by Plaintiff regarding the issue of arbitrability and delegation is inapplicable to the facts of this case or has since been overruled.[49]

**D.      Plaintiff's Arguments in Further Opposition to the Motion**

In the sur-reply brief, Plaintiff contends that this case involves an "infinite arbitration agreement," and asserts that "while there is ample jurisprudence supporting RAC's argument" in

---

[43] *Id.*

[44] *Id.*

[45] Rec. Doc. 31 at 4.

[46] *Id.* at 7.

[47] *Id.*

[48] *Id.* at 7–8.

[49] *Id.* at 8–13.

favor of arbitration, "there is plenty of authority on the other side."[50] Plaintiff argues that circuits

are split on the question of whether infinite arbitration clauses should be upheld.[51] Plaintiff

contends that because Plaintiff's claims in this case are "wholly unrelated" to the 2017 Arbitration

Agreement, it would be an absurd result to enforce the arbitration provision with respect to her

current claims.[52]

### III. Legal Standard

In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of

Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of

eliminating the courts' historic hostility to arbitration agreements."[53] The Fifth Circuit further

explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other

contracts."[54] This means that, "as a matter of federal law, arbitration agreements and clauses are

to be enforced unless they are invalid under principles of state law that govern all contracts."[55]

There is a "strong federal policy in favor of enforcing arbitration agreements."[56] Section

3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration . . . the court . . . shall on application of one of
> the parties stay the trial of the action until such arbitration has been had in

---

[50] Rec. Doc. 33 at 2.

[51] *Id.* at 2–3.

[52] *Id.* at 4.

[53] 379 F.3d 159, 166 (5th Cir. 2004).

[54] *Id.*

[55] *Id.*

[56] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

accordance with the terms of the agreement . . . .[57]

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has

no discretion under section 3 to deny the stay."[58]

### IV. Analysis

In 2017, Plaintiff and RAC entered into the 2017 Rental-Purchase Agreement. Such

agreement contains the 2017 Arbitration Agreement which pertinently provides for arbitration of

"claims that arise after the termination of any Consumer Contract between [Plaintiff] and RAC."[59]

The arbitration provision also states that "any and all disputes relating to the interpretation,

applicability, enforceability or formation of this Agreement, including, but not limited to, any

contention that all or any part of this agreement to arbitrate is void or voidable" is subject to

arbitration.[60]

In the instant motion, RAC argues that under the terms of the 2017 Rental-Purchase

Agreement and the 2017 Arbitration Agreement, an arbitrator, and not this Court, must make the

preliminary determination of the arbitrability of the instant dispute. Alternatively, if this Court

does undertake an arbitrability analysis, RAC argues that Plaintiff's claims fall within the scope

of the 2017 Arbitration Agreement and therefore, arbitration is mandated. RAC moves the Court

to dismiss this action pending arbitration.

---

[57] 9 U.S.C. § 3.

[58] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (quoting *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[59] Rec. Doc. 17-1 at 6.

[60] *Id.*

### A.      Whether Arbitration is Warranted

RAC contends that under the terms of the 2017 Rental-Purchase Agreement and the 2017 Arbitration Agreement, an arbitrator, and not this Court, must determine whether the instant case is subject to arbitration. In opposition, Plaintiff argues that because she challenges the very existence of the fraudulent contract between the parties, this Court must determine whether arbitration is warranted.

"[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."[61] The Supreme Court has clearly held that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[62] The Supreme Court has reasoned that an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."[63] The Supreme Court has further made clear that even when a court believes a provision delegating the "arbitrability question" to an arbitrator to be "wholly groundless," the court must nevertheless honor the provision.[64]

The Fifth Circuit has held that a motion to compel arbitration should be granted when an arbitration provision purports to delegate the issue of arbitrability to an arbitrator as long as (1) the parties have entered into a valid arbitration agreement and (2) the agreement contains a valid

---

[61] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

[62] *Id.* (quoting *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)) (internal quotation marks omitted).

[63] *Rent-A-Center W.*, 561 U.S. at 70.

[64] *Henry Schein*, 139 S. Ct. at 524.

delegation clause.[65] *Will-Drill Resources, Inc. v. Samson Resources Co.*,[66] to which Plaintiff

extensively cites, showcases the first step of this analysis.

In *Will-Drill Resources*, the defendant company presented a proposed sale agreement

seeking to purchase a number of properties from the plaintiffs and several other sellers.[67] After

some of the properties' owners decided not to sell, the defendant withdrew the proposed sale

agreement.[68] The defendant contended that its offer to buy all of the properties was rejected and

therefore, no contract was formed.[69] Thereafter, the plaintiffs brought suit against the defendant,

and moved to compel arbitration pursuant to an arbitration clause in the proposed sale

agreement.[70] The district court entered a judgment compelling arbitration, finding that the issue

of whether the proposed sale agreement was an enforceable contract was for the arbitrator to

decide.[71] The Fifth Circuit reversed and held that the court, not an arbitrator, must determine

whether the parties entered into a valid contract.[72] The appellate court based its reasoning on the

fact that the defendant attacked "the very existence of any agreement."[73] Accordingly, the Fifth

Circuit held that "[w]here the very existence of any agreement is disputed, it is for the courts to

decide at the outset whether an agreement was reached, applying state-law principles of

---

[65] *Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 378 (5th Cir. 2016).

[66] 352 F.3d 211 (5th Cir. 2003).

[67] *Id.* at 213.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 214–15.

[72] *Id.* at 215.

[73] *Id.* at 218.

contract."[74]

Here, the Court's analysis under this first step is limited to determining the validity of the contract containing the arbitration provision at issue—in this case, the 2017 Rental-Purchase Agreement. The Court's analysis is brief, as the parties agree that that the 2017 Rental-Purchase Agreement and the 2017 Arbitration Agreement therein were validly formed.[75] While Plaintiff argues that this dispute should not be referred to arbitration because she "denies the very existence" of the allegedly fraudulent account created in her name in 2020, her argument is irrelevant under the first step of this Court's analysis because the fraudulent contract is not being invoked by RAC as a basis for arbitration. Given that the parties agree that the 2017 Rental-Purchase Agreement is a valid contract containing a valid arbitration provision, the Court's analysis regarding contract formation ends.

The only question left for the Court is whether the 2017 Rental-Purchase Agreement contains a valid delegation clause. The Court finds in the affirmative. "A delegation clause is a provision in an arbitration agreement that transfer[s] the power to decide threshold questions of arbitrability to the arbitrator."[76] Here, the 2017 Arbitration Agreement specifically provides that "any and all disputes relating to the interpretation, applicability, enforceability or formation of this Agreement" shall be referred to arbitration.[77] This exact language has been upheld by the

---

[74] *Id.*; *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019).

[75] Rec. Doc. 19 at 9.

[76] *Reyna*, 839 F.3d at 378.

[77] Rec. Doc. 17-1 at 6.

Supreme Court[78] and the Fifth Circuit as a valid delegation to an arbitrator.[79] Given that the parties entered into a valid contract, the 2017 Rental-Purchase Agreement, which contains the arbitration provision invoked by RAC and which they assert covers this situation regarding fraud arising out of information Plaintiff provided in that agreement, and given that the arbitration provision contains a valid delegation clause, the determination of arbitrability of the instant dispute belongs to an arbitrator.[80]

### B.  Whether This Action Should be Dismissed Pending Arbitration

Having determined that the issue of arbitrability must be decided by the arbitrator, the Court must next determine whether to dismiss or stay Plaintiff's claims against RAC pending arbitration. According to RAC, all of Plaintiff's claims should be referred to arbitration and the case should be dismissed.[81] Plaintiff argues that a stay, not dismissal, is appropriate pending arbitration.[82]

Section 3 of the FAA provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete.[83] In the instant motion, RAC urges the Court to instead use its

---

[78] *Rent-A-Center W.*, 561 U.S. at 66.

[79] *Reyna*, 839 F.3d at 378.

[80] Plaintiff urges this Court to decline to compel arbitration because the 2017 Arbitration Agreement is an "infinite arbitration agreement" and enforcing such agreement within the context of Plaintiff's current claims would lead to "absurd results." Rec. Doc. 29-2. Plaintiff's claims, and the cases she relies on, go to the issue of whether Plaintiff's claims fall within the scope of the 2017 Arbitration Agreement. However, Plaintiff fails to recognize that under the terms of the 2017 Arbitration Agreement, the Court cannot analyze the applicability of the arbitration provision to Plaintiff's claims. Because a valid delegation clause exists in the 2017 Arbitration Agreement, it is the job of an arbitrator, and not this Court, to determine if Plaintiff's claims have merit.

[81] Rec. Doc. 17-1 at 17.

[82] Rec. Doc. 19 at 9.

[83] 9 U.S.C. § 3.

discretion to dismiss Plaintiff's claims pending arbitration. RAC invokes *Alford v. Dean Witter Reynolds, Inc.*, in which the Fifth Circuit stated that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."[84] In later cases, however, the Fifth Circuit clarified the language in the *Alford* opinion. Indeed, in *Apache Bohai Corp. LDC v. Texaco China, B.V.*, the Fifth Circuit stated that "*Alford* held merely that dismissal was not an abuse of discretion" and, moreover, *Alford* "did not hold that dismissal was required" when all of a party's claims are subject to arbitration.[85] Instead, the district courts also have discretion to stay the case.[86] Here, Plaintiff brings claims against RAC, Experian, and Trans Union. Neither Experian nor Trans Union have moved the Court to stay or dismiss the claims pending against them. Therefore, the Court exercises its discretion and stay Plaintiff's claims against RAC pending arbitration.

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that RAC's "Motion to Compel Arbitration and Dismiss."[87] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED IN PART** to the extent RAC moves the Court to compel arbitration. The Motion is **DENIED IN PART** to the extent RAC moves this Court to dismiss Plaintiff's claims against RAC.

---

[84] 975 F.2d 1161, 1164 (5th Cir. 1992).

[85] 330 F.3d 307, 311 n.9 (5th Cir. 2003).

[86] *Id.*; *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (stating that "district courts have discretion to dismiss cases in favor of arbitration," but not implying any obligation to do so).

[87] Rec. Doc. 17.

**IT IS FURTHER ORDERED** that the claims brought by Plaintiff against RAC in the above-captioned matter are **STAYED** pending arbitration.

**NEW ORLEANS, LOUISIANA,** this ___30th___ day of July, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**