**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CYNTHIA CHILDERS**                                        **CIVIL ACTION**

**VERSUS**                                                          **NO. 21-960**

**RENT-A-CENTER EAST, INC., ET AL.**                     **SECTION: "G"**

## <u>ORDER AND REASONS</u>

Before the Court is Defendant Experian Information Solutions, Inc.'s ("Experian")
Motion for Summary Judgment.[1] Plaintiff Cynthia Childers ("Plaintiff") brings this suit against
Experian alleging violations of the Fair Credit Reporting Act ("FCRA").[2] Plaintiff alleges that
an account was fraudulently opened under her name through RAC Acceptance East, LLC's
("RAC") credit division, AcceptanceNow.[3] Plaintiff claims that Experian negligently and
willfully failed to comply with the FCRA by verifying an erroneous debt that it knew or should
have known was not accurate.[4]

Experian argues that Plaintiff's claims cannot survive summary judgment because: (1)
Plaintiff has no evidence that Experian's actions in reinvestigating Plaintiff's fraud claims were
unreasonable, a necessary element of her Section 1681i claim; and (2) Plaintiff has no evidence
of actual damages.[5] In opposition, Plaintiff argues that Experian failed to properly reinvestigate

---

[1] Rec. Doc. 125.

[2] 15 U.S.C. § 1681, *et seq.*

[3] Rec. Doc. 1 at 2.

[4] Rec. Doc. 67.

[5] Rec. Doc. 125-1.

Plaintiff's fraud allegations.[6] Considering the motion, the opposition, the reply memorandum, the record, and the applicable law, the Court grants the motion in part as to the claim for willful noncompliance with the FCRA, and denies the motion in part as to the issue of actual damages and the claim for negligent noncompliance with the FCRA

## I. Background

On May 18, 2021, Plaintiff filed a complaint in this Court.[7] In the complaint, Plaintiff alleges that on January 8, 2021, she discovered that an account had been fraudulently opened in her name in RAC's credit division, AcceptanceNow.[8] Plaintiff claims that she "immediately commenced the dispute process, as she did not open any such AcceptanceNow account" and "had not purchased or leased any furniture" at the time the account was opened.[9] Plaintiff alleges that she filed a police report and submitted formal disputes with Trans Union, LLC ("Trans Union") on January 8, 2021, and with Experian on January 19, 2021.[10] Plaintiff claims that both credit agencies "responded . . . that the account was accurate" and refused to remove the entry from her credit report.[11]

On February 16, 2021, Plaintiff submitted another formal dispute of the AcceptanceNow account to Experian.[12] On March 3, 2021, Experian responded and verified the AcceptanceNow debt as accurate, refusing to remove the account from Plaintiff's credit report.[13]

---

[6] Rec. Doc. 134.

[7] Rec. Doc. 1.

[8] *Id.* at 2.

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.* at 3–4.

[12] *Id.*

[13] *Id.*

Plaintiff alleges that thereafter, she reported the account to RAC.[14] Plaintiff claims that a division of RAC, Preferred Lease, instructed her to submit additional information, which Plaintiff did in the form of evidence of her identity and a copy of the complaint she had submitted to the police.[15] Plaintiff alleges that a Preferred Lease employee, James Simmons, then emailed a Preferred Lease Reporting Specialist, Valerie Rosen, informing Ms. Rosen that RAC employees had opened fraudulent accounts in the names of RAC customers and requested that such accounts be removed from the customers' credit reports.[16] Plaintiff claims that on March 12, 2021, she received confirmation from AcceptanceNow that the account had been fraudulently opened by an RAC employee and that the account would be closed.[17] Plaintiff claims that she was "promised the account would be removed from [her] credit history, but that it would take 30-60 days to accomplish."[18]

Despite this promise, as of May 18, 2021 when the Complaint was filed, Plaintiff alleges that Experian and Trans Union, along with Equifax Information Services, LLC, all report that Plaintiff "owes a balance of $3,753.00 to AcceptanceNow."[19] Plaintiff claims that "rather than close the fraudulent account, RAC reported it as a charge-off" and "rather than conduct any re-investigation of RAC's verifications, Trans Union and Experian simply rubber-stamped RAC's erroneous reports."[20] Plaintiff claims that the presence of the fraudulent account on her credit report has led to her being "turned down for an application for credit through Pay[P]al" and

---

[14] *Id.* at 4.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 5.

[18] *Id.*

[19] *Id.* at 5–6.

[20] *Id.* at 6.

prevented her from "securing approval for a car loan at an interest rate she should otherwise be entitled to."[21]

In this suit, Plaintiff brings the following claims: (i) negligent noncompliance with the Fair Credit Reporting Act ("FCRA") against RAC; (ii) willful noncompliance with the FCRA against RAC; (iii) unfair trade practices under Louisiana Revised Statute § 51:1409 against RAC; (iv) violation of the Fair Debt Collections Practices Act ("FDCPA") by RAC; (v) negligent noncompliance with the FCRA against Trans Union; (vi) willful noncompliance with the FCRA against Trans Union; (vii) negligent noncompliance with the FCRA against Experian; and (viii) willful noncompliance with the FCRA against Experian.[22]

On August 2, 2021, the Court ordered Plaintiff to arbitrate her claims against RAC.[23] On October 26, 2022, Plaintiff voluntarily dismissed her claims against RAC.[24] On April 10, 2023, Plaintiff filed an amended complaint wherein she states that the Court took judicial notice of admissions by RAC that (1) the AcceptanceNOW account was falsely created in Plaintiff's name by a third party; and (2) AcceptanceNOW should not have verified the account.[25]

On August 6, 2024, Experian filed the instant motion for summary judgment.[26] On August 13, 2024, Plaintiff filed an opposition to the motion.[27] On August 19, 2024, Experian filed a reply memorandum in further support of the motion.[28]

---

[21] *Id.*

[22] *Id.* at 6–12.

[23] Rec. Doc. 36.

[24] Rec. Doc. 56.

[25] Rec. Doc. 67 at 4–5.

[26] Rec. Doc. 125.

[27] Rec. Doc. 134.

[28] Rec. Doc. 145.

On September 6, 2024, Plaintiff voluntarily dismissed her claims against Trans Union and Equifax.[29]

## II. Parties' Arguments

### A.   Experian's Arguments in Support of the Motion

Experian argues that 15 U.S.C. § 1681c-2 requires a credit reporting agency to stop reporting on an account that is alleged to be the result of identity theft when a consumer provides the following: (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.[30] Experian contends that because Plaintiff failed to provide proof of identity after multiple requests, as required by 15 U.S.C. § 1681c-2, this Court should reject Plaintiff's claims.[31] Experian avers that jurisprudence supports a grant of summary judgment in these circumstances.[32] Experian contends that Plaintiff testified during her deposition that she made the decision to not provide proof of identification to Experian.[33]

Experian argues that because Plaintiff failed to provide proof of identification with her disputes, the FCRA did not permit Experian to block the RAC account based on alleged identity theft.[34] Experian contends that it cannot be held liable under 15 U.S.C. § 1681i because it acted

---

[29] Rec. Doc. 151.

[30] Rec. Doc. 125-1 at 20–21.

[31] *Id.* at 23.

[32] *Id.* at 23–24.

[33] *Id.* at 25.

[34] *Id.* at 26.

reasonably pursuant to 15 U.S.C. § 1681c-2.[35] Experian states that on May 20, 2021, it removed the RAC account from Plaintiff's Experian reports.[36]

According to Experian, Plaintiff has no evidence that its actions were unreasonable to support her claim pursuant to 15 U.S.C. § 1681i.[37] Experian contends that other courts have held that relying on the automated credit dispute verification ("ACDV") procedure is reasonable where there is no evidence that a data furnisher is unreliable.[38] Experian avers that its use of the ACDV process during its reinvestigation of Plaintiff's claims was reasonable.[39] While RAC later confirmed that it sent Experian erroneous information, Experian states it had no way of knowing that the information was false.[40] Experian contends the FCRA does not require Experian to investigate further.[41]

Experian argues there is no evidence that Plaintiff suffered actual damages.[42] Experian contends that Plaintiff relies on vague assertions of emotional distress.[43] Experian avers that the Fifth Circuit requires a "degree of specificity" and claims must be supported by additional evidence.[44] Experian asserts that Plaintiff has failed to make a detailed showing regarding the nature and extent of her harm, nor does she show that the injury was caused by Experian's

---

[35] *Id.*

[36] *Id.* at 17.

[37] *Id.* at 26.

[38] *Id.* at 27.

[39] *Id.* at 28.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 29.

[43] *Id.*

[44] *Id.*

conduct.[45]

Experian argues that Plaintiff has no evidence that Experian violated the FCRA willfully or recklessly.[46]

### B.   *Plaintiff's Arguments in Opposition to the Motion*

In opposition, Plaintiff states Experian's internal documents reveal that following Plaintiff's first formal dispute to Experian on January 9, 2021, Experian sent RAC an ACDV and instructed Plaintiff to contact RAC directly.[47] Plaintiff contends Experian took no action to verify the validity of the account once it received the ACDV back from RAC.[48]

As to Plaintiff's second formal dispute to Experian on February 16, 2021, Plaintiff states that the Experian employee noted "RCVD FAKE FTC ITR" in regard to Plaintiff's dispute.[49] While Experian instructed Plaintiff to provide a Federal Trade Commission ("FTC") identity theft report, Plaintiff contends Experian did not process the FTC identity theft report after determining it was fake.[50]

Plaintiff contends Experian's corporate designee testified that Experian checked the address on the ACDV and saw that the address matched the address Experian had on file.[51] Plaintiff avers that this was the extent of Experian's reinvestigation process.[52] According to Plaintiff, she has not lived at the address used to open the fraudulent account since 2009, and

---

[45] *Id.* at 30.

[46] *Id.*

[47] Rec. Doc. 134 at 4.

[48] *Id.*

[49] *Id.* at 5.

[50] *Id.*

[51] *Id.* at 6.

[52] *Id.*

Experian should have known of the discrepancy in the addresses.[53] Plaintiff states that Experian's knowledge of said discrepancy is evidenced by the notation that read "soft delete address" on both ACDVs.[54] Plaintiff argues that Experian either did not do the bare minimum of checking addresses or ignored the discrepancy.[55]

Plaintiff argues that Experian's motion for summary judgment conflates two distinct issues.[56] Specifically, Plaintiff contends that Experian confuses blocking of a consumer's credit file pursuant to 15 U.S.C. § 1681c-2 and the reinvestigation requirements of 15 U.S.C. § 1681i.[57] Plaintiff avers that when she provided an FTC identity theft report to Experian, the reinvestigation obligation of 15 U.S.C. § 1681i was triggered.[58] While Experian argues that an allegation of identity theft automatically limits claims under the FCRA to 15 U.S.C. § 1681c-2, Plaintiff argues that this is simply wrong.[59] Plaintiff asserts that she has not alleged a claim pursuant to 15 U.S.C. § 1681c-2.[60]

Plaintiff contends it is indisputable that Experian prepared a report containing inaccurate information and Plaintiff sent Experian the FTC identity theft report and police slip, which triggered Experian's reinvestigation requirements.[61] Plaintiff argues that there remains a

---

[53] *Id.*

[54] *Id.* at 7.

[55] *Id.*

[56] *Id.* at 9.

[57] *Id.*

[58] *Id.* at 10.

[59] *Id.* at 11.

[60] *Id.*

[61] *Id.* at 13.

genuine dispute of material fact as to the authenticity of the FTC identity theft report.[62]

Plaintiff states that the Consumer Financial Protection Bureau ("CFPB") has issued its Consumer Protection Circular 2022-07, titled "Reasonable Investigation of Consumer Reporting Disputes," which provides that consumer reporting agencies and the entities that furnish information to them ("furnishers") are not permitted to impose obstacles that deter submission of disputes.[63] The CFPB goes on to state that "[e]nforcers may bring claims if consumer reporting agencies and furnishers limit consumers' dispute rights by requiring any specific format or requiring any specific attachment such as a copy of a police report or consumer report beyond what the statute and regulations permit."[64] To the extent that she could not provide a full police report due to the ongoing investigation or that the FTC fraud affidavit was not in a suitable format, Plaintiff asserts that the Court should consider the CFPB's guidance.[65]

Plaintiff cites jurisprudence establishing that a CRA's reliance on the ACDV process alone was not reasonable in circumstances of multiple disputes to the CRA and where facts arose that give question to the furnisher's reliability.[66] Plaintiff contends that Experian should have concluded that RAC was an unreliable source of information.[67] Plaintiff states that "the reasonableness of a credit reporting agency's reinvestigation is a question for the jury unless

---

[62] *Id.*

[63] *Id.*

[64] *Id.* at 13–14 (*See* Federal Register, Vol. 87, No. 225, November 23, 2022. https://www.govinfo.gov/content/pkg/FR-2022- 11-23/pdf/2022-25138.pdf.)

[65] *Id.* at 14.

[66] *Id.* at 14–15.

[67] *Id.* at 16.

reasonableness is beyond dispute."[68] Plaintiff contends that Experian's actions of only checking Plaintiff's address when faced with allegations of identity theft is less than reasonable.[69] Plaintiff argues that it is questionable as to whether Experian verified Plaintiff's address because the discrepancy in Plaintiff's addresses went unnoticed.[70]

## C.   *Experian's Arguments in Further Support of the Motion*

In response, Experian argues that Plaintiff failed to provide the required proof of identification.[71] Experian concedes that its reinvestigation obligation pursuant to 15 U.S.C. § 1681c-2 was triggered, however, Experian contends that Plaintiff did not allow Experian to complete the process because she refused to provide proof of identification.[72] Experian avers that Plaintiff has no cause of action because she refused to submit an official identification document as required by 15 U.S.C. § 1681c-2.[73] Experian contends that jurisprudence has established that a plaintiff cannot avail herself to a more general provision (e.g., 15 U.S.C. § 1681i), where she failed to comply with a more specific provision (e.g., 15 U.S.C. § 1681c-2).[74]

Experian asserts it is undisputed that it timely completed its reinvestigations, sent the relevant information to RAC about the disputes, and confirmed that the information RAC had about the accountholder matched the information that Experian had.[75] While Plaintiff contends that she has not resided at the address identified in the ACDV responses, Experian argues that

---

[68] *Id.* (citing *Chaitoff v. Experian Information Solutions, Inc.,* 79 F. 4th 800, 819 (7th Cir. 2023)).

[69] *Id.*

[70] *Id.* at 17.

[71] Rec. Doc. 145 at 6.

[72] *Id.* at 7.

[73] *Id.* at 8.

[74] *Id.*

[75] *Id.* at 9.

Plaintiff's proof of identification could have aided in determining that the address was incorrect.[76] Experian argues that it did more than engage in the ACDV process, and courts have upheld the ACDV process as reasonable as a matter of law.[77]

Experian argues there is no evidence that RAC is an unreliable furnisher of information.[78] Experian contends that the case law relied on by Plaintiff does not support Plaintiff's argument that RAC was an unreliable furnisher.[79] Experian avers that it had no reason to consider RAC unreliable, and there is no evidence showing that RAC had "systematic issues" with its reporting.[80] Experian asserts that, absent evidence of unreliability, the ACDV process, along with Experian's action were sufficient to satisfy 15 U.S.C. § 1681i.[81]

While Plaintiff relies on admissions by RAC that the RAC account was falsely created in Plaintiff's name, Experian argues that this was not revealed until after Plaintiff filed the instant suit.[82] Experian states that RAC's corporate representative previously testified that there would have been no way for Experian to know of RAC's internal investigation of the fraudulent activity.[83] Experian asserts that there is nothing more Experian could have done to determine such a fraud occurred.[84]

According to Experian, Plaintiff concedes that Experian has not caused her any damages

---

[76] *Id.*

[77] *Id.* at 10.

[78] *Id.*

[79] *Id.* at 10–11.

[80] *Id.* at 11.

[81] *Id.* at 12.

[82] *Id.*

[83] *Id.*

[84] *Id.*

because Plaintiff failed to address this issue in her response memorandum.[85] Experian contends that it is entitled to summary judgment on this issue because Plaintiff fails to provide a "degree of specificity" as to her claims for emotional distress.[86] Experian states that without actual damages, Plaintiff's negligence claims fail.[87]

Experian argues that Plaintiff fails to support her argument that "parroting" entitles her to punitive damages.[88] Experian contends that Plaintiff cannot show that Experian willfully violated the FCRA, which would entitle Plaintiff to punitive damages.[89]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[90] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[91] All reasonable inferences are drawn in favor of the nonmoving party.[92] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for

---

[85] *Id.*

[86] *Id.* at 13.

[87] *Id.*

[88] *Id.* at 14.

[89] *Id.*

[90] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[91] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[92] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

summary judgment."[93] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[94] The nonmoving party may not rest upon the pleadings.[95] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[96]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[97] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[98] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[99] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[100]

---

[93] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[94] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[95] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[96] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[97] *Celotex Corp.*, 477 U.S. at 323.

[98] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[99] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[100] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[101] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[102]

## IV. Analysis

Plaintiff brings claims against Experian for negligent and willful noncompliance with the FCRA.[103] Experian has moved for summary judgment on the issues of (1) its alleged negligent and willful failure to reasonably investigate Plaintiff's allegations of fraud; (2) actual damages.[104]

### A.      FCRA

Congress designed the FCRA to meet "the needs of commerce for consumer credit, personnel, insurance, and other information" while also ensuring "the confidentiality, accuracy, relevancy, and proper utilization" of consumer information.[105] The FCRA "defines a complex set of rights and obligations that attend the relationships among and between the provider of a credit report, the user of that information and the consumer who is made the subject of such a report."[106] The FCRA requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom

---

[101] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[102] *Morris*, 144 F.3d at 380.

[103] *See* Rec. Doc. 67.

[104] Rec. Doc. 125.

[105] 15 U.S.C. § 1681(b); *Stevenson v. TRW Inc.,* 987 F.2d 288, 292 (5th Cir. 1993).

[106] *Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 895 (5th Cir. 1998).

the report relates."[107] The statute also imposes on the consumer reporting agencies a duty to conduct a reasonable reinvestigation into any item that is disputed by a consumer,[108] and to "block" the reporting of information that a consumer claims was the result of identity theft.[109]

The agency is allowed thirty days (unless extended in accordance with the statute) to conduct its reinvestigation.[110] As part of the reinvestigation, the agency shall review and consider all relevant information in the consumer file and all relevant information submitted by the consumer regarding the dispute.[111] Additionally, the agency must notify the creditor within five business days after receiving the consumer's notice of dispute.[112] "The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."[113]

If an item is found to be inaccurate or incomplete, the agency promptly shall delete that item or modify it and shall notify the creditor that the item was deleted or modified.[114] Regardless of the outcome of the reinvestigation, the consumer reporting agency must provide written notice of the results to the consumer.[115] The consumer notice shall include, "if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information ..., including the business name and address of any furnisher of

---

[107] 15 U.S.C. § 1681e(b); *see also Pinner v. Schmidt,* 805 F.2d 1258, 1261–62 (5th Cir. 1986).

[108] 15 U.S.C. § 1681i(a)(1)(A); *Pinner,* 805 F.2d at 1262.

[109] 15 U.S.C. § 1681c–2(a).

[110] 15 U.S.C. § 1681i(a)(1).

[111] 15 U.S.C. § 1681i(a)(4).

[112] 15 U.S.C. § 1681i(a)(2)(A).

[113] *Id.*

[114] 15 U.S.C. § 1681i(a)(5)(A).

[115] 15 U.S.C. § 1681i(a)(6)(A).

information contacted in connection with such information and the telephone number of such furnisher, if reasonably available."[116] Finally, if the reinvestigation does not resolve the dispute, the consumer may file a statement explaining the nature of the dispute to be printed alongside the disputed item on the credit report.[117]

If a consumer reporting agency willfully fails to comply with these requirements, it may be liable for punitive damages in addition to actual damages.[118] However, the FCRA does not impose strict liability on consumer reporting agencies for negligent noncompliance.[119] A consumer reporting agency that unintentionally errs can be held liable only for the consumer's actual damages that resulted from the agency's failure to comply with the statute.[120]

## B.  *Negligent Noncompliance with the FCRA*

15 U.S.C. § 1681o provides for civil liability for negligent noncompliance with the FCRA. Any person who is negligent in failing to comply with a requirement of the FCRA is liable for any actual damages sustained by the consumer.[121] The FCRA requires consumer reporting agencies to "maintain reasonable procedures" to "assure maximum possible accuracy of the information concerning the individual about whom the report relates."[122] Additionally, the FCRA requires consumer reporting agencies to reinvestigate credit report information the

---

[116] 15 U.S.C. § 1681i(a)(6)(B)(iii).

[117] 15 U.S.C. § 1681i(b).

[118] 15 U.S.C. § 1681n; *Stevenson,* 987 F.2d at 292; *Pinner,* 805 F.2d at 1262.

[119] *See* 15 U.S.C. § 1681o; *See Hyde v. Hibernia Nat'l Bank in Jefferson Parish,* 861 F.2d 446, 447 (5th Cir. 1988); *Thompson v. San Antonio Retail Merchs. Ass'n,* 682 F.2d 509, 513 (5th Cir. 1982).

[120] *See* 15 U.S.C. § 1681o; *Stevenson,* 987 F.2d at 292; *Pinner,* 805 F.2d at 1262; *Hyde,* 861 F.2d at 448.

[121] 15 U.S.C. § 1681o(a).

[122] 15 U.S.C. § 1681e(b).

consumer disputes as being inaccurate,[123] and, when certain preconditions are met, to block reporting of information the consumer claims was the result of identity theft.[124]

Experian argues that although Plaintiff alleges that she is only bringing a claim pursuant to 15 U.S.C. § 1681i requiring a reasonable reinvestigation, Plaintiff's allegations of identity theft trigger 15 U.S.C. § 1681c-2. Considering Plaintiff would not provide the information required by 15 U.S.C. § 1681c-2, Experian argues that Plaintiff cannot bring a claim pursuant to 15 U.S.C. § 1681i. While Experian is correct that jurisprudence has established that allegations of identity theft *can* trigger the blocking requirements of 15 U.S.C. § 1681c-2,[125] the caselaw cited by Experian does not establish that a plaintiff who alleges identity theft is *limited* to a claim under 15 U.S.C. § 1681c-2. For example, Experian relies on *Natsuhara v. Bank of Missouri* in support of its argument. However, the court in *Natsuhara* allowed the plaintiff who alleged identity theft to bring a claim pursuant to 15 U.S.C. § 1681i. The court in *Lavender v. Experian Info. Sol. Inc.*[126] also allowed a plaintiff alleging identity theft to maintain a claim pursuant to 15 U.S.C. § 1681i. Plaintiff here clarifies that she is attempting to bring a claim only under 15 U.S.C.§ 1681i. As such, the Court rejects Experian's argument.

Section 1681i(a) provides, in pertinent part:

[I]f the completeness of accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency … of such a dispute, the agency shall, free of

---

[123] 15 U.S.C. § 1681i.

[124] 15 U.S.C. § 1681c-2.

[125] *Haykuhi Avetisyan v. Experian Info. Sols., Inc.,* No. CV 14-05276-AB (ASX), 2016 WL 7638189, at *9 (C.D. Cal. June 3, 2016) ("if the dispute does include a notice of identity theft, then the fraud blocking obligations of § 1681c-2(a) are triggered.") *See also Jiminez v. Barclays Bank Delaware*, 2018 WL 4376459 at *3 (E.D.N.Y. Aug. 1, 2018) (noting that to state claim under Section 1681c-2, a plaintiff must allege facts showing plaintiff notified a CRA of an alleged identity theft.).

[126] 2023 WL 3739041 (E.D. Penn. May 30, 2023).

> charge, conduct a reasonable investigation to determine whether the disputed
> information is accurate…

To assert a claim under § 1681i, Plaintiff must establish: (1) she disputed the completeness or

accuracy of an item of information contained in her consumer credit file held with the CRA and

that she notified the CRA directly of that dispute; (2) the CRA did not reinvestigate free of

charge and either record the current status of the disputed information or delete the item from

the plaintiff's file in the manner set forth by § 1681i(a)(5) within the statutory period; (3) the

CRA's noncompliance was negligent or willful; (4) the plaintiff suffered injury; and (5) the

plaintiff's injury was caused by the CRA's failure to reinvestigate and record the current status

of the disputed information or delete the item from the file.[127]

This requirement to conduct a reasonable investigation to determine whether disputed

information in a consumer credit report can be verified is widely recognized.[128] A reasonable

investigation "clearly requires some degree of careful inquiry by creditors" and more than just a

"superficial" inquiry.[129] However, "reasonableness" is generally a question of fact for the

jury.[130]

It is undisputed that the subject RAC AcceptanceNow account opened in Plaintiff's

name was fraudulent. As such, Plaintiff has shown that her credit file contained inaccurate

information. Experian has provided a detailed account of the procedures used in reinvestigating

---

[127] *McCoy v. SC Tiger Manor, LLC*, 2022 WL 621000, at *7 (M.D. La. Feb. 11, 2022) (citing *Hammer v. Equifax Info. Servs, LLC*, No. 18-1502, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019).

[128] *Johnson v. MBNA Am. Bank, N .A.,* 357 F.3d 426, 430 n. 2, 431 (4th Cir. 2004) (collecting cases); accord *Lang v. TCF Nat'l Bank,* No. 07-1415, 2007 WL 2752360, at *1 (7th Cir. Sept. 21, 2007); *Johnson v. MBNA Am. Bank, N.A.,* No. Civ. 1:05CV00150, 2006 WL 618077, at *5 (M.D.N.C. Mar. 9, 2006); *DiPrinzio v. MBNA Am. Bank, N.A.,* No. 04-872, 2005 WL 2039175, at *10 (E.D.Pa. Aug. 24, 2005).

[129] *Johnson,* 357 F.3d at 430, 431.

[130] *Cousin v. Trans Union Corp.,* 246 F.3d 359, 368-69 (5th Cir. 2001) (citing *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991).

Plaintiff's dispute regarding the RAC account. Plaintiff does not argue that Experian failed to fulfill the various timing and procedural requirements regarding reinvestigation, only that the procedures Experian used were not reasonable under the circumstances. Plaintiff argues that, considering the nature of her disputes, it was unreasonable for Experian to rely exclusively on information that it received via ACDV from RAC.

Plaintiff submitted two disputes to Experian. In her first dispute, Plaintiff alleged that she was the victim of identity theft but failed to provide an identity theft report or proof of identity.[131] In her second dispute, Plaintiff provided an identity theft report but again failed to provide Experian with proof of identity.[132] Nevertheless, Experian contends that it sent an ACDV to RAC, and RAC returned the ACDV confirming the account as accurate. Experian asserts that it went beyond the ACDV and compared the address used in opening the fraudulent RAC account with the address Experian had on file for Plaintiff. However, Plaintiff argues that a review of her address would have revealed a discrepancy because she had not lived at the address used in opening the AcceptanceNow account since 2009. Plaintiff contends that Experian's records show a notation stating, "soft delete address," which proves that Experian had knowledge that the address was not accurate. On the other hand, Experian argues that Plaintiff's failure to provide proof of identity hindered its ability to conduct a reasonable investigation.

The Fifth Circuit, along with other circuits, has recognized that a reasonable investigation may require a consumer reporting agency to go to greater depths in verifying accuracy than simply relying on the response by the original source of information.[133] "In a

---

[131] Rec. Doc. 67 at 3.

[132] *Id.*

[133] *See Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3rd Cir. 1997) (holding that a consumer

reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."[134] While Experian contends that it went beyond the ACDV process and confirmed the accuracy of Plaintiff's address, based on the apparent discrepancy in the address used to create the fraudulent account, there is a genuine dispute as to whether the steps taken by Experian were reasonable.

Based on the identity theft allegations, Plaintiff's multiple disputes, and the discrepancy in addresses, a reasonable juror could conclude Experian should have known that RAC was not a reputable source of information, and that further investigation was necessary.[135] A reasonable juror could also conclude that Plaintiff's failure to provide proof of identity hindered Experian's ability to conduct a reasonable investigation. "The reasonableness of a credit reporting agency's reinvestigation is a question for the jury unless reasonableness is beyond dispute."[136] "Reasonableness" is generally a question of fact for the jury.[137] The Court does not find that the reasonableness of Experian's investigation is beyond dispute here. As such, the Court finds that the reasonableness of Experian's investigation is a question for the trier of fact.

---

reporting agency may be required, in some cases, to verify the accuracy of its initial source of information); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994) (holding that a reporting agency may be required to verify the accuracy by way of a more thorough investigation); *Stevenson*, 987 F.2d at 293 (holding that, given the complexity of the consumer dispute, the consumer reporting agency acted unreasonably in relying solely on CDV forms); *Pinner*, 805 F.2d at 1262 (holding that an agency's investigation was unreasonable where the only person contacted for verification was an individual who was known to have a poor relationship with the consumer).

[134] *Stevenson*, 987 F.2d at 293.

[135] *See Stevenson*, 987 F.2d at 293 (*"*[Credit-reporting firm] relied solely on the CDVs despite the number of disputed accounts and the allegations of fraud."); *Compare Watkins v. Experian*, 2014 WL 12879669, at *8 (W.D. Tex. Sept. 8, 2014) (finding nothing in the nature of the consumer's dispute or the data furnisher's response to put Experian on notice that further investigation was necessary as plaintiff does not claim that the data furnishers were unreliable sources of information and the nature of the dispute—which did not involve identity theft—did not warrant further investigation by Experian).

[136] *Chaitoff v. Experian Information Solutions, Inc.,* 79 F. 4th 800, 819 (7th Cir. 2023).

[137] *Cousin,* 246 F.3d at 368–69 (citing *Cahlin.,* 936 F.2d at 1156).

C.      **Actual Damages**

Section 1681o authorizes a consumer to recover actual damages sustained from the consumer reporting agency's negligent violation of a requirement under FCRA. Actual damages may include out-of-pocket monetary losses, injury to credit reputation and mental anguish, humiliation, or embarrassment.[138] Actual damages include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses.[139] Of course, such damages must be warranted by the evidence.[140]

A review of the summary judgment record shows that during Plaintiff's deposition, she testified that she was denied for a few credit cards which was a "nightmare and a headache."[141] In *Pinner v. Schmidt,* the plaintiff similarly testified that he was embarrassed and humiliated about the credit denials from several retail stores.[142] The Fifth Circuit found that "[t]his should support an award of some damages."[143] As such, summary judgment must be denied as to this issue.

D.      **Willful Noncompliance with the FCRA**

Section 1681n provides for civil liability for willful noncompliance with the FCRA. As with her negligent noncompliance claim, Plaintiff's willful noncompliance claim pertains to

---

[138] *Fischl v. Gen. Motors Acceptance Corp.,* 708 F.2d 143, 148 (5th Cir. 1983) (citing *Anderson v. United Finance Co.,* 666 F.2d 1274 (9th Cir.1982); *Owens v. Magee Finance Serv. of Bogalusa, Inc.,* 476 F.Supp. 758 (E.D.La.1979).

[139] *Fischl,* 708 F.2d at 151.

[140] *Pinner,* 805 F.2d at 1265.

[141] Rec. Doc. 125-6 at 86.

[142] *Pinner,* 805 F.2d at 1265.

[143] *Id.*

Experian's failure to meet the requirements of § 1681i. Under the willful noncompliance statute, a consumer may obtain punitive damages.[144]

"Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful."[145] The Fifth Circuit has required evidence suggesting that the agency "knowingly and intentionally committed an act in conscious disregard for the rights of others."[146] Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments.[147] In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer.[148]

"Where a CRA relies entirely on a furnisher's response to disputed information without conducting an investigation of its own, the CRA's conduct can support a claim for willfulness."[149] Relying solely on the response of a date furnisher does not automatically rise to the level of willfulness but in some situations it can create a jury question.[150] In *Younger*, the district court found that there were facts in dispute precluding summary judgment on willfulness because the CRA was provided information it could have used to reinvestigate without relying

---

[144] *See* 15 U.S.C. § 1681n(a)(2).

[145] *Fischl*, 708 F.2d at 151.

[146] *See Pinner*, 805 F.2d at 1263; *see also Philbin*, 101 F.3d at 970; *Stevenson*, 987 F.2d at 293.

[147] *See Pinner*, 805 F.2d at 1263.

[148] *See id.* (discussing *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829 (8th Cir.1976)); *see also Stevenson*, 987 F.2d at 294.

[149] *Younger v. Experian Information Solutions, Inc.*, No. 2:15-CV-952, 2017 WL 5465527, at *6 (N.D. Ala. Sept. 22, 2017) (citing *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330 (S.D. Fla. 2011) (jury could conclude reinvestigation was not "reasonable" under § 1681i(a) where defendant made no effort of its own to verify disputed information)).

[150] *Id.* (citing *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015).

solely on the furnisher's response.[151] In contrast, Plaintiff here failed to provide Experian with proof of identity which could have been used by Experian to reinvestigate.

Plaintiff has not presented evidence that Experian had actual knowledge that the account was fraudulent to support a finding of a "knowing disregard for the truth," which establishes malice.[152] Plaintiff has also failed to present evidence of a willful misrepresentation or concealment by Experian, or that Experian "knowingly and intentionally committed an act in conscious disregard for the rights of others."[153] As the Eleventh Circuit noted, "[t]aking no steps other than contacting only [the furnisher] with an ACDV form regarding the disputed entry might have been negligent, but willfulness or recklessness is a higher standard…"[154] As such, the Court grants summary judgment in favor of Experian as to Plaintiff's claim for willful noncompliance with the FCRA.

---

[151] *Id.* at *7.

[152] *Embrey v. First Franklin Fin. Corp.*, 2013 WL 1289401, *5 (S.D. Fla. Mar. 12, 2013) and *Kamps v. Midland Funding, LLC*, 2013 WL 622505 (N.D. Ala. 2013)).

[153] *See Pinner,* 805 F.2d at 1263; *see also Philbin,* 101 F.3d at 970; *Stevenson*, 987 F.2d at 293.

[154] *Collins v. Experian Inf. Sol. Inc*., 775 F.3d 1330, 1336 (11th Cir. 2015).

## V. Conclusion

For the reasons stated herein, the Court finds that genuine issues of material fact remain as to Plaintiff's claim for negligent noncompliance with the FCRA and the issue of actual damages. The Court finds that Experian is entitled to judgment in its favor regarding Plaintiff's claim for willful noncompliance with the FCRA. Accordingly,

**IT IS HEREBY ORDERED** that Experian's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**. The motion is granted as to the claim for willful noncompliance with the FCRA. The motion is denied as to the issue of actual damages and the claim for negligent noncompliance with the FCRA.

**NEW ORLEANS, LOUISIANA,** this ___30th___ day of September, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**